**K & D AUTO BODY, INC., Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

**No. WD 64400.**

Missouri Court of Appeals, Western District.

Aug. 16, 2005.

**102**

Mathew E. Hoffman, St. Louis, MO, for appellant.

Larry R. Ruhmann, St. Louis, MO, for respondent.

Before ROBERT G. ULRICH, P.J., JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

K & D Auto Body, Inc. ("K & D") appeals a June 16, 2004 Order of the La-

bor and Industrial Relations Commission of Missouri ("Commission") affirming the Division of Employment Security's ("Division's") determination that, pursuant to the applicable provisions of Chapter 288 (the Missouri Employment Security Law),[1] several dozen tow truck drivers engaged by K & D were employees of K & D, not independent contractors, since they performed services for "wages" in "employment" by K & D within the meaning of those terms as defined in sections 288.034.1 and 288.036.1.

Our review of the Commission's decision is governed by section 288.210, which provides, in relevant part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Decisions of the Commission "which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction." *Merriman v. Ben Gutman Truck Serv., Inc.,* 392 S.W.2d 292, 297 (Mo.1965) (internal quotation marks omit-

---

1. All statutory references are to RSMo 2000.

ted). "We independently review such questions without giving any deference to the Commission's conclusions." *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102 (Mo.App. S.D.2004). Moreover, where the Commission's "finding of ultimate fact is reached by the application of rules of law instead of by a process of natural reasoning from the facts alone, it is a conclusion of law and subject to our reversal." *Merriman*, 392 S.W.2d at 297; *see also Baxi v. United Techs. Auto.*, 956 S.W.2d 340, 343 (Mo.App. E.D.1997). Accordingly, in reviewing the correctness of the Commission's legal conclusion that, based on the facts found by the Commission, the drivers in question were employees of K & D rather than independent contractors, we exercise our own independent judgment and do not defer to the Commission's conclusion, including the way in which it arrived at that conclusion by balancing, weighing, and applying the various facts it found.

■ "The Commission's factual findings, on the other hand, are treated deferentially." *CNW Foods*, 141 S.W.3d at 102; *§ 288.210*. As to such findings, "the reviewing court does not substitute its judgment for that of the [C]ommission[.]" *Merriman*, 392 S.W.2d at 296. Rather, "[a]bsent fraud, the Commission's factual findings are conclusive on appeal if they are supported by competent and substantial evidence upon the whole record and are not clearly against the overwhelming weight of the evidence." *CNW Foods*, 141 S.W.3d at 102.

The facts of this case as found by the Commission are largely undisputed. K & D, which also does business as M & M Towing, is an employer subject to the Missouri Employment Security Law. It runs a towing service and owns several tow trucks for that purpose. K & D engages various individuals to drive the trucks. These individuals are asked to sign an agreement, which states that the driver is an independent contractor for K & D and that K & D will pay the driver one-third of the total fee or charge for each tow job. The agreement was amended in 2001 to reflect that drivers are responsible for paying up to $1,000 in damages "acquired in [an] accident or wreck be it to [the] truck or other vehicles," although there was no evidence that any of the drivers had been involved in such an accident since then and actually had to pay those damages. All of the workers involved in this case performed services for K & D as tow truck drivers, and their services were an integral part of K & D's business.

K & D finds drivers by word of mouth and by newspaper advertisements seeking "commission drivers." While K & D is licensed to operate throughout the United States and the drivers sometimes work out-of-state, most of the work is performed in Missouri. K & D engages only experienced drivers. If a driver is nevertheless unfamiliar with how to attach certain types of vehicles to the tow truck he or she is driving, K & D provides simple instructions, as it also does regarding safety issues. However, the training and instruction provided by K & D is not significant. Drivers are required to perform their services personally and do not have helpers. K & D provides uniforms, but does not require the drivers to wear them.

K & D provides the chains and the tow trucks themselves, which range in value from $60,000 to $120,000. The drivers are required to provide their own hand tools, such as wrenches and sockets, the value of which ranges from $200 to $400. While K & D provides workers' compensation coverage to those drivers who do not already have it, the cost of the coverage is recovered from them by reducing their remuneration on a dollar-for-dollar basis.

The drivers perform their services under K & D's business name, and the tow trucks they drive are marked with K & D's business name as well. They do not advertise as providing towing services in their own names and do not represent themselves to the public as independent tow truck drivers. Because he regards it as a conflict of interest, K & D's president, Ron Kuhn, testified that K & D does not engage drivers who are performing towing services for themselves or for other towing companies. However, drivers occasionally repair vehicles apart from providing services to K & D, and when they do so, K & D does not provide them with any additional workers' compensation coverage.

Under federal Department of Transportation rules, the drivers are required to have commercial drivers' licenses. The drivers themselves, not K & D, pay the costs for these licenses. Federal Department of Transportation regulations also require K & D to perform random drug tests on the drivers, and the costs of such tests are borne by K & D. Under these regulations, K & D may also require individual drivers to submit to a drug test upon reasonable suspicion, and K & D's president occasionally requests such drug tests. Usually, the driver in question simply quits rather than submit to the drug test.

In an attempt to match incoming tow requests with a particular driver's availability, drivers provide K & D's dispatcher with a list of times they are available, and K & D issues pagers to the drivers. Each driver has the right to refuse any tow job. If a driver refuses a number of such jobs, the dispatcher is less likely to contact that driver when a tow request comes in.

Although federal law provides that Class A tow truck drivers are permitted to work a maximum of ten hours per day and the drivers keep time logs to prove they are in compliance with the law, K & D does not require any of its drivers to work full-time. K & D does not guarantee continued work or a minimum amount of pay to the drivers, who are paid by the job and can suffer a financial loss on a particular job if the tow results in damage.

K & D pays the drivers by check. There is no withholding for Social Security or Medicare taxes or federal or state income taxes, and K & D provides the drivers with a Form 1099–MISC to report their earnings to the Internal Revenue Service ("IRS"). K & D can discharge a driver at any time without incurring liability and a driver can also quit at any time without incurring liability.

K & D also submitted into evidence a July 3, 1996 document indicating that the IRS had performed an investigation of the work relationship between K & D and its drivers for the purpose of determining K & D's federal employment tax liability. According to this document, the IRS determined that K & D's drivers are properly classified as independent contractors rather than employees of K & D.

On the facts set forth *supra*, the Commission concluded that K & D's drivers were employees of K & D rather than independent contractors. This is the subject of K & D's sole point on appeal, in which it argues that this conclusion was erroneous as a matter of law.

Section 288.034.5 provides the following "right to control" test for determining whether, under the Missouri Employment Security Law, an individual is an employee or an independent contractor:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining

the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

The term "independent contractor" is not defined in the Employment Security Law. However, our Supreme Court has provided the following judicial definition, which is entirely consonant with section 288.034.5: "An 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer, except as to the result of his work." *Vaseleou v. St. Louis Realty & Sec. Co.*, 344 Mo. 1121, 130 S.W.2d 538, 539 (1939). "Decisions hold without exception that whether the work status is that of employee or independent contractor depends on the facts in a particular case." *Burgess v. NaCom Cable Co.*, 923 S.W.2d 450, 452 (Mo.App. E.D.1996).

8 CSR 10–4.150(1), which has been in continuous effect since February 11, 1990, and was promulgated by the director of the Division after approval by the director of the Department of Labor and Industrial Relations pursuant to section 288.220.5, further provides, in relevant part:

In order to interpret section 288.034.5, RSMo, effective June 30, 1989, the division shall apply the common law rules applicable in determining the employer-employee relationship under 26 U.S.C., Section 3306(i). In applying the provisions of 26 U.S.C., Section 3306(i) the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings interpreting and applying that subsection.

As an aid to determining whether a worker is an employee or an independent contractor under the common law rules, the IRS has identified twenty factors to consider in determining whether sufficient control is present to establish an employer-employee relationship. *See Rev. Rul. 87–41, 1987–1 C.B. 296*, 1987 WL 419174.

Those factors are: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) right to terminate. *Nat'l Heritage Enters., Inc. v. Div. of Employment Sec.*, 164 S.W.3d 160, 167 (Mo. App. W.D.2005). These factors were considered by the Commission in its June 16, 2004 decision (which found that K & D's drivers were employees of K & D), as well as by the IRS in its July 3, 1996 determination (which found that they were independent contractors).

"Missouri courts routinely apply the twenty-factor test in determining the nature of the employment relationship for purposes of tax liability," *id.*, and those factors "have been consistently used as an aid for determining whether an individual is an employee or independent contractor under the common law rules[.]" *Klausner*

*v. Brockman*, 58 S.W.3d 671, 679 (Mo.App. W.D.2001), *overruled in part on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 225 (Mo. banc 2003). As we explained in *Klausner*:

> Since Rev. Rul. 87–41 was issued, the factors have always been intended as *guides* or *aids* in determining employment status. The factors are not intended to serve as a bright-line rule with no flexibility, but rather they are indices of control to assist the employer in attempting, for tax purposes, to determine the common law employment status of its workers. Not every factor is applicable in every situation, and each case is decided on the basis of its own facts. The degree of importance attached to each factor varies depending on the type of work and individual circumstances, and the relevant factors should be considered in inquiring about employment status with no one factor being decisive.

*Id.* at 680 (emphasis in original).

■ Consequently, we must examine the twenty factors in light of the Commission's factual findings. In our discussion of the factors, the initial paragraph is the descriptive comment quoted directly from IRS Revenue Ruling 87–41. *See Quality Med. Transcription v. Woods*, 91 S.W.3d 181, 185 (Mo.App. W.D.2002); *Fritts v. Williams*, 992 S.W.2d 375, 380 (Mo.App. S.D.1999).

### Factor 1—Instructions

A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions.

■ "With respect to the 'instructions' factor, the right to control is manifested in control over the 'when, where and how' work is completed." *Kirksville Pub. Co. v. Div. of Employment Sec.*, 950 S.W.2d 891, 897 (Mo.App. W.D.1997). Here, the inherent nature of towing work, not K & D, dictates the "when" and "where." Additionally, each tow truck driver engaged by K & D has the right to accept or refuse any tow job when notified of it by K & D's dispatcher via pager. As to "how," the Division cites to nothing in the record showing that K & D has either promulgated or requires compliance with any instructions governing the specific manner or methodology by which the drivers are to carry out each tow job. Instead, the record shows that the drivers are instructed merely that a tow job is available and that they are required to fill out a tow sheet detailing "the terms of the tow and the fee charged for the tow" should they accept the job. In other words, K & D has instructional control over the result of the drivers' towing work, but not over the time, place, or manner in which they perform that work.

■ The Division claims that K & D has the right to require the drivers' compliance with its instructions since K & D "can require the drivers to take a random drug test mandated by the Federal Government if the driver's name comes up for random screening." However, "reasonable efforts to insure compliance with government regulations do not evidence control 'unless pervasive control by the employer exceeds to a significant degree the scope of the government imposed control.'" *Travelers Equities Sales, Inc. v. Div. of Employment Sec.*, 927 S.W.2d 912, 918 (Mo.App. W.D. 1996) (quoting *NLRB v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 922 (11th Cir.1983)). As the record contains no evidence supporting such a conclusion, we reject this claim. In light of the foregoing,

Factor 1 favors independent contractor status.

### Factor 2—Training

Training a worker by requiring an experienced employee to work with the worker, by corresponding with the worker, by requiring the worker to attend meetings, or by using other methods, indicates that the person or persons for whom the services are performed want the services performed in a particular method or manner.

■ "The 'training' factor refers to an experienced worker giving guidance to new workers to demonstrate how the instructions, discussed *supra*, must be followed." *Kirksville Pub. Co.*, 950 S.W.2d at 897. K & D engages only skilled, experienced tow truck drivers and relies on their judgment. Thus, it does not train them by requiring experienced employees or other personnel to work with them or by requiring them to attend meetings. The only "training" K & D provides is simple operating instructions, and those are only given if a particular driver is unfamiliar with how to attach certain types of vehicles to the particular tow truck he or she is driving. "Any instruction or training that [K & D] did provide to the [drivers] was *de minimis*, or went to the result, timely delivery of the [tow services], and was not evidence of [K & D's] right to control the manner and means of delivery [of tow services] by the [drivers]." *Id.* at 898. Consequently, although the Division asserts that it is either inapplicable or shows a slight indication of employment, we conclude that Factor 2 favors independent contractor status.

### Factor 3—Integration

Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

■ "The integration factor refers to whether a business could continue without the contribution of the services in question; as such, integral services are more likely to be subject to the business' control." *Nat'l Heritage Enters.*, 164 S.W.3d at 168. The success and continuation of K & D's towing business clearly depends, to an appreciable degree, upon the performance of certain services by its drivers. Since those services are also an integral part of K & D's overall business operations, Factor 3 favors employee status.

### Factor 4—Services Rendered Personally

If the services must be rendered personally, presumably the person or persons for whom the services are performed are interested in the methods used to accomplish the work as well as in the results.

Drivers engaged by K & D are required to render their services personally, so Factor 4 favors employee status as well.

### Factor 5—Hiring, Supervising, and Paying Assistants

If the person or persons for whom the services are performed hire, supervise, and pay assistants, that factor generally shows control over the workers on the job. However, if one worker hires, supervises, and pays the other assistants pursuant to a contract under which the worker agrees to provide materials and labor under which the worker is responsible only for the attainment of a result,

this factor indicates an independent contractor status.

Although the drivers occasionally arrange for personal friends to accompany them on tow jobs, K & D does not hire, supervise, or pay assistants to help the drivers perform their work and these informal "helpers" are not paid, either by the drivers or K & D. Furthermore, although the written agreement between K & D and the drivers permits them to employ assistants to help them fulfill "any contracts to tow which [the drivers] shall accept in their own name," there was no evidence that any of the drivers ever actually did so. Consequently, Factor 5 is neutral.

### Factor 6—Continuing Relationship

A continuing relationship between the worker and the person or persons for whom the services are performed indicates that an employer-employee relationship exists. A continuing relationship may exist where work is performed at frequently recurring although irregular intervals.

The Commission did not make a specific factual finding as to this particular factor. The Division nevertheless claims that it favors employee status, noting that according to the field auditor's worksheets for the calendar year 1999, seven of K & D's twenty-three drivers were paid more than $19,000, and that in the calendar year 2000, six of K & D's twenty-two drivers were paid more than $19,000. From this, the Division infers that "[a] number of the [drivers] were apparently employed for the entire audit period." However, the worksheets also reveal that only seven of the twenty-three drivers who were paid by K & D in 1999 were also paid by K & D in 2000, which suggests that many drivers worked only a short time. Although these numbers seemingly lead to opposite conclusions, in actuality, they reflect a business pattern that is consistent with developing continuing, long-term relationships with a limited number of drivers. They suggest that the seven drivers in 1999 who did a lot of towing business and earned over $19,000 continued on with K & D into 2000 and presumably beyond, but those who did very little business did not stay for an extended time. This is consistent with the evidence that if drivers rejected several tows, K & D's dispatcher tended not to call them again. Thus, those drivers who regularly accepted dispatches made significantly more money and stayed with the company, while those who rejected assignments or received relatively few earned less and consequently moved on to other opportunities, leading to K & D's engagement of a new group of drivers. While contemplating regular turnover among a portion of the drivers, this approach is nevertheless designed to build a continuing relationship with a core number of drivers. Accordingly, Factor 6 weighs in favor of employee status.

### Factor 7—Set Hours of Work

The establishment of set hours of work by the person or persons for whom the services are performed is a factor indicating control.

K & D does not mandate any specific time parameters for the drivers, but allows them to set their own work schedules by providing K & D's dispatcher with a list of times they are available and can be reached via pager, subject only to federal restrictions on the maximum number of hours a day Class A tow truck drivers are permitted to work. Since K & D has not established set hours for the performance of the services provided by the drivers, Factor 7 favors independent contractor status.

### Factor 8—Full Time Required

If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work. An independent contractor, on the other hand, is free to work when and for whom he or she chooses.

K & D does not require any of the drivers to work full-time. Moreover, as indicated by the field auditor's worksheets for calendar years 1999 and 2000, almost half of the drivers engaged by K & D were paid less than $5,000 per year, from which it may be inferred that they did not devote substantially full time to the business of K & D. Accordingly, Factor 8 favors independent contractor status.

### Factor 9—Doing Work on Employer's Premises

If the work is performed on the premises of the person or persons for whom the services are performed, that factor suggests control over the worker, especially if the work could be done elsewhere. Work done off the premises of the person or persons receiving the services, such as at the office of the worker, indicates some freedom from control. However, this fact by itself does not mean that the worker is not an employee. The importance of this factor depends on the nature of the service involved and the extent to which an employer generally would require that employees perform such services on the employer's premises. Control over the place of work is indicated when the person or persons for whom the services are performed have the right to compel the worker to travel a designated route, to canvass a territory within a certain time, or to work at specific places as required.

Due to the particular nature of the towing services performed by the drivers, which obviously must be carried out at locations other than K & D's business premises, this factor is inapplicable.

### Factor 10—Order or Sequence Set

If a worker must perform services in the order or sequence set by the person or persons for whom the services are performed, that factor shows that the worker is not free to follow the worker's own pattern of work but must follow the established routines and schedules of the person or persons for whom the services are performed. Often, because of the nature of an occupation, the person or persons for whom the services are performed do not set the order of the services or set the order infrequently. It is sufficient to show control, however, if such person or persons retain the right to do so.

The inherent nature of tow truck operations, rather than K & D, dictates the order or sequence of the services performed by the drivers. In other words, after communicating with K & D's dispatchers, the drivers must travel to the location of the disabled vehicle and then tow the vehicle to the location designated by the customer. However, each driver has the right to refuse any tow job when notified of it by K & D's dispatcher via pager. This is consistent with independent contractor status, because upon being offered a project, independent contractors are generally "free to accept or reject the offer." *Fritts*, 992 S.W.2d at 385. For this reason, Factor 10 favors independent contractor status.

*Factor 11—Oral or Written Reports*

A requirement that the worker submit regular or written reports to the person or persons for whom the services are performed indicates a degree of control.

The record demonstrates that the drivers are required to submit to K & D time logs (which must be maintained to prove their compliance with federal law governing the maximum numbers of hours of work they may perform each day) and tow sheets (which detail the terms of the tow and the total fee charged for the tow). The fact that K & D requires the time logs so it can demonstrate compliance with the maximum hours of driving provisions of federal law suggests that it is responsible for the driver's compliance. If the drivers were independent contractors, K & D would presumably have no responsibility for such compliance. Accordingly, Factor 11 favors employee status.

*Factor 12—Payment by Hour, Week, Month*

Payment by the hour, week, or month generally points to an employer-employee relationship, provided that this method of payment is not just a convenient way of paying a lump sum agreed upon as the cost of a job. Payment made by the job or on a straight commission generally indicates that the worker is an independent contractor.

K & D does not pay drivers by the hour, week, or month, and K & D's newspaper advertisements expressly sought "commission drivers." K & D pays its drivers a flat one-third of the total fee or charge for each tow job they perform. Thus, Factor 12 favors independent contractor status.

*Factor 13—Payment of Business and/or Traveling Expenses*

If the person or persons for whom the services are performed ordinarily pay the worker's business and/or traveling expenses, the worker is ordinarily an employee. An employer, to be able to control expenses, generally retains the right to regulate and direct the worker's business activities.

K & D paid for the liability and related insurance on the trucks. There was conflicting evidence as to whether K & D also paid the truck-related business expenses for fuel, oil, light bulbs and the like. One of the driver agreements introduced by K & D indicates that the drivers would pay those expenses. But Ron Kuhn, K & D's president, specifically testified that K & D reimbursed drivers for those truck-related expenses. The Commission did not resolve this factual controversy and, therefore, the best that can be said is that Factor 13 is undetermined.

*Factor 14—Furnishing of Tools and Materials*

The fact that the person or persons for whom the services are performed furnish significant tools, materials, and other equipment tends to show the existence of an employer-employee relationship.

K & D owns and furnishes the tow chains and the tow trucks themselves, which range in value from $60,000 to $120,000 per vehicle. Meanwhile, the drivers are required by K & D to provide only their own hand tools, such as wrenches and sockets, the value of which ranges from $200 to $400 per driver and is comparatively insignificant. Factor 14 favors employee status.

*Factor 15—Significant Investment*

If the worker invests in facilities that are used by the worker in performing services and are not typically main-

tained by employees (such as maintenance of an office rented at fair market value from an unrelated party), that factor tends to indicate that the worker is an independent contractor. On the other hand, lack of investment in facilities indicates dependence on the person or persons for whom the services are performed for such facilities and, accordingly, the existence of an employer-employee relationship. Special scrutiny is required with respect to certain types of facilities, such as home offices.

There was no evidence that any of the drivers made any investment in facilities or workspaces for the purpose of performing their jobs. Accordingly, this factor favors employee status. *See Nat'l Resort Mart, Inc. v. Hitchcock,* 88 S.W.3d 459, 470 (Mo.App. W.D.2002); *Stover Delivery Sys., Inc. v. Div. of Employment Sec.,* 11 S.W.3d 685, 694 (Mo.App. W.D.1999).

*Factor 16—Realization of Profit or Loss*

A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee. For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor. The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

As indicated earlier, none of the drivers have any investment for facilities or otherwise. Therefore, they bear no risk of loss

in that regard, and they likewise cannot make an investment profit. Their compensation is limited to one-third of the charge for the tow, less the cost of workers' compensation insurance if applicable, but the potential for higher or lower income is influenced as much by the number of tow requests in the area serviced by the driver as by his acceptance or rejection of dispatches. While the 2001 modification of the driver agreement purports to make each driver liable for up to $1,000 in damages on a particular job if the tow results in personal or property damage arising out of an accident or wreck, there was no evidence that a driver had ever actually had to pay for damage under this policy. Thus, the only evidence of risk of loss on the part of the drivers was this potential for up to a $1,000 loss in the event of an accident. This can hardly be said to be a "bona fide liability for expenses, such as salary payments to unrelated employees" as contemplated by this factor. Accordingly, Factor 16 leans slightly toward employee status.

*Factor 17—Working for More Than One Firm at a Time*

If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

There was very little evidence presented by either party regarding this factor, which probably explains why the Commission did not make a specific factual finding relating to it. What scant proof there was (namely, that the drivers occasionally repair vehicles apart from providing services

to K & D and that K & D had "priority" on their work time) is conflicting. Therefore, we consider Factor 17 as being neutral.

### Factor 18—Making Service Available to General Public

The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

The drivers perform their services under K & D's business name, and the tow trucks they drive are marked with K & D's business name as well. Although the written agreement between K & D and the drivers permits them to "solicit a towing contract on [their] own behalf and in [their] own name[s]," they do not advertise as providing towing services in their own names and do not represent themselves to the public as independent tow truck drivers. Furthermore, K & D provides uniforms (though the drivers need not wear them) and does not engage drivers who are also performing towing services for themselves or for other towing companies. Thus, Factor 18 favors employee status.

### Factor 19—Right to Discharge

The right to discharge a worker is a factor indicating that the worker is an employee and the person possessing the right is an employer. An employer exercises control through the threat of dismissal, which causes the worker to obey the employer's instructions. An independent contractor, on the other hand, cannot be fired so long as the independent contractor produces a result that meets the contract specifications.

As K & D can discharge a driver at any time without incurring liability, including liability for breach of contract, Factor 19 favors employee status.

### Factor 20—Right to Terminate

If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

Since a driver can terminate his or her work relationship with K & D at any time without incurring any financial liability, for breach of contract or otherwise, Factor 20 favors employee status.

To summarize, of the twenty factors set forth in Revenue Ruling 87–41, ten are indicative of employee status, while six suggest independent contractor status and four are either neutral, inapplicable, or undetermined. Our analysis does not stop here, though, because the twenty factors discussed *supra* are simply "guides or aids in determining the nature of the employment relationship, and are not the only factors to consider." *Nat'l Heritage Enters.*, 164 S.W.3d at 167.

Two such additional factors, which were set forth by the United States Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989),[2] are "(1) the provision of employee benefits, and (2) the tax treatment of the hired party." *Fritts*, 992 S.W.2d at 385 (citing *Reid*, 490 U.S. at 751–52, 109 S.Ct. at 2178–79). As the Commission did not make a finding as to whether K & D provided the drivers typical employee benefits such as health insurance, paid vacations, or a retirement plan,

---

**2.** In *Reid*, the question before the Court was whether a party hired to produce copyrighted work was an employee under the general common law of agency. 490 U.S. at 732, 741, 109 S.Ct. at 2168–69, 2173.

the first additional factor identified in *Reid* is undetermined. As to the "tax treatment" factor mentioned in *Reid*, the Commission concluded only that it was "not bound" by the IRS' July 3, 1996 determination that K & D's drivers were properly classified as independent contractors rather than employees of K & D. This conclusion was entirely correct, since section 288.215.2 provides:

> Any finding of fact, conclusion of law, judgment or order made by an arbitrator, commissioner, commission, administrative law judge, judge or any other person or body with authority to make findings of fact or law in any proceeding not brought under this chapter shall not be binding or conclusive on an appeals tribunal or the labor and industrial relations commission in any subsequent or separate proceeding brought under this chapter, regardless of whether the prior action was between the same or related parties or involved the same facts.

As this court very recently held in *Higgins v. Missouri Division of Employment Security*, 167 S.W.3d 275, 281 (Mo.App. W.D., 2005), section 288.215.2 "reflects a legislative intent to prohibit proceedings outside the Missouri Employment Security Law from having a binding effect upon the Commission."[3] However, that the findings of fact, conclusions of law, judgments, or orders entered in such independent proceedings are not *binding* or *conclusive* upon the Commission or the Division's Appeals Tribunal does not mean they are to be or must be entirely ignored. *See, e.g.,*

*Nat'l Sch. of Aeronautics, Inc. v. Div. of Employment Sec.*, 226 S.W.2d 93, 97 (Mo. App. W.D.1950) ("While such a decision is by no means binding on us, yet it may be noticed in this case.")

As did the Commission, we find the 1996 IRS determination that K & D's drivers were independent contractors to be of little significance in the case *sub judice*. The IRS determination was for tax years long prior to the tax years covered by the Commission's 2004 Order, and there was no specific evidence presented to the Commission as to whether K & D's business, employment, and/or tax practices had remained the same or changed appreciably during the intervening years. Thus, it is impossible to tell with any degree of confidence whether a comparison would be apples to apples, or apples to oranges. Since there was no additional evidence to "fill in the blanks," the best that can be said is that although the IRS found K & D to be using independent contractors in prior years, no legitimate inference can be drawn that it would so find for the tax years in question here. Consequently, we can only conclude that this factor is also undetermined.

Since neither of these additional factors support either independent contractor or employee status, we are left to a great extent with the weight to be attributed to each of the applicable twenty factors discussed *supra*. Numerically, a relatively large majority of those factors (ten) favor employee status, whereas a smaller num-

---

**3.** Section 288.215.2 was enacted in 1988. However, long before then, the appellate courts of this state had already reached similar conclusions. *See, e.g., Trianon Hotel Co. v. Keitel*, 350 Mo. 1041, 169 S.W.2d 891, 896 (1943) (holding that IRS "departmental rulings are not necessarily controlling"); *A.J. Meyer & Co. v. Unemployment Comp. Comm'n*, 348 Mo. 147, 152 S.W.2d 184, 190 (1941) (noting, with regard to a conflicting federal Treasury Department ruling, that "[o]ur unemployment compensation act is not circumscribed by the federal act"); *Beal v. Indus. Comm'n*, 535 S.W.2d 450, 461 (Mo.App. W.D. 1975) (holding that United States Treasury Department "rulings are not binding on the court in a determination whether [an individual] is an employee within the meaning of the Missouri Employment Security Law.")

ber (six) suggest independent contractor status. But as noted previously, our decision does not rest on a simple numerical count of the factors. *Travelers Equities Sales,* 927 S.W.2d at 925.

The Commission correctly noted the particular significance of K & D providing the drivers with trucks that cost $60,000 to $120,000 to use in performing the tows, citing *Hinton v. Bohling Van & Storage Co.,* 796 S.W.2d 87, 90 (Mo.App. E.D.1990), for the proposition that ownership of the trucks results in an inference of the right to control. The late Professor Arthur Larson, in his exhaustive and encyclopedic treatise on workers' compensation law and related legal issues, similarly notes that "[w]hen the employer furnishes valuable equipment, the relationship is almost invariably that of employment." 3 ARTHUR LARSON & LEX K. LARSON, LARSON'S WORKERS' COMPENSATION LAW § 61.07[1], at 61–18 (2005). Professor Larson then goes on to explain the rationale for the rule as follows:

> When it is the employer who furnishes the equipment, the inference of right of control is a matter of common sense and business. The owner of a $10,000 truck who entrusts it to a driver is naturally going to dictate details such as speed, maintenance, and the like, in order to protect his or her investment. Moreover, since there is capital tied up in this piece of equipment, the owner will also want to ensure that it is kept as productive and busy as possible. For these reasons, it is not surprising that there seems to be no case on record in which the employer owned the truck but the driver was held to be an independent contractor.

*Id.* § 61.07[2], at 61–19.

While not conclusive, K & D's practice of supplying equipment with very substantial value (and providing insurance coverage thereon) is a factor that must be given considerable weight in evaluating the right to control issue. So, too, are the factors such as integration; rendering services personally; continuing relationships; lack of investment; and the right to terminate without liability, among the various other factors favoring employee status. Overall, we conclude that the greater weight and importance of the factors addressed herein support the Commission's legal conclusion that K & D's drivers were employees under the statutory test of section 288.034.5.

Accordingly, the decision of the Labor and Industrial Relations Commission is affirmed.

All concur.