**E.P.M. INC., Appellant,**

v.

**John BUCKMAN, Respondent,**

**Division of Employment Security, Respondent.**

**Nos. WD 70161, WD 70162, WD 70163, WD 70164.**

Missouri Court of Appeals, Western District.

Nov. 24, 2009.

Earl F. Seitz, for Appellant.

John Buckman, Respondent pro se.

Larry R. Ruhlmann, for Respondent Division of Employment Security.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

E.P.M., Inc. appeals from four decisions of the Labor and Industrial Relations Commission ("the Commission"), all of which involve whether manufacturer's representatives for E.P.M. are employees or independent contractors of the company. For the following reasons, the Commission's orders are affirmed.

On February 1, 2005, John Buckman became a manufacturer's representative for E.P.M., which manufactures and sells computerized temperature control systems. Buckman was assigned a territory covering areas of northern Missouri and southern Iowa. He was responsible for developing potential customers, performing sales calls, presenting engineering proposals, and customer service. Buckman was paid a fifteen percent commission on service work and sales in his territory. Though he was given a contract to execute, Buckman never signed that contract.

On November 10, 2006, E.P.M. announced it was terminating the contracts for all of its manufacturer's representatives and offered a new contract to them. Buckman refused to sign the new contract and ceased working for E.P.M. on that date. The other representatives did sign the new contract and continued in their posts.

When Buckman filed an application for unemployment benefits with the Division of Employment Security, E.P.M. challenged that claim, arguing that Buckman was an independent contractor and not an employee of E.P.M. and that Buckman had voluntarily quit his position with the company. Alternatively, E.P.M. claimed that Buckman was terminated for misconduct related to work for refusing to sign the new contract. Following a hearing, a deputy for the Division found the manufacturer's representatives for E.P.M. were employees of the company and that Buckman had been discharged by the company for reasons other than misconduct.

Because of its findings in Buckman's case, the Division investigated the employment status of other manufacturer's representatives for E.P.M. and found that they were also employees of the company. A deputy determined that the manufacturer's representatives were entitled to wage credits and that the unemployment insurance tax account of E.P.M. should be adjusted to reflect that fact. E.P.M. appealed the various deputy's decisions to the Appeals Tribunal which heard all of those appeals on June 26, 2008. After the Appeals Tribunal affirmed the deputy's determinations, E.P.M. appealed to the Commission. On September 3, 2008, the Commission issued orders affirming the decisions of the Appeals Tribunal and adopting them as its own. E.P.M. now appeals the four decisions to this Court.

Our review of the Commission's decisions is governed by § 288.210,[1] which states in relevant part:

The findings of the commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the

1. All statutory references are to RSMo 2000 unless otherwise noted.

decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

"We will affirm the Commission's decision if we find, upon a review of the whole record that 'there is sufficient competent and substantial evidence to support the [Commission's decision].'" *Higgins v. Missouri Div. of Employment Sec.,* 167 S.W.3d 275, 279 (Mo.App. W.D.2005) (quoting *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003)). "[W]e defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Martinez v. Nationwide Paper,* 211 S.W.3d 111, 115 (Mo.App. S.D.2006) (internal quotation omitted). "However, we owe no deference to the Commission's conclusions of law or application of the law to the facts." *Higgins,* 167 S.W.3d at 279.

■ In its first point, E.P.M. contends that the Commission erred in finding that Buckman was an employee of E.P.M. rather than an independent contractor because that determination was not supported by sufficient competent evidence. E.P.M. further asserts that the facts found by the Commission do not support the award.

■ "Whether an individual is an employee or independent contractor is a question of fact to be determined by a factfinder." *Ascoli v. Hinck,* 256 S.W.3d 592, 595 (Mo.App. W.D.2008). Where a worker has received remuneration from an employer, there is a presumption of an employer-employee relationship, and to the

extent it challenges that presumption, the burden of proof rests with the employer to show, under the common law right to control test, that the worker is an independent contractor. *Bedford Falls Co. v. Division of Employment Sec.,* 998 S.W.2d 851, 856 (Mo.App. W.D.1999); *see also Burns v. Labor & Indus. Relations Comm'n,* 845 S.W.2d 553, 556 (Mo. banc 1993). The Division "determines whether a worker is an employee or an independent contractor pursuant to 8 CSR 10–4.150(1) and section 288.034.5." *Haggard v. Division of Employment Sec.,* 238 S.W.3d 151, 156 (Mo. banc 2007). Section 288.034.5, RSMo. Cum.Supp.2006, provides:

> Service performed by an individual for remuneration shall be deemed to be employment subject to [Missouri's employment security] law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

8 CSR 10–4.150(1) states that the division is to apply the common law rules applicable in determining the employer-employee relationship under the Internal Revenue Code, Section 3306(i). *Higgins,* 167 S.W.3d at 279. "In applying the provisions of the [I.R.C.], section 3306(i) the division shall consider the case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings in-

terpreting and applying that subsection." *Id.* (quoting 8 CSR 10–4.150). "As an aid to determining whether a worker is an employee or an independent contractor under the common law rules, the IRS has identified twenty factors to consider in determining whether sufficient control is present to establish an employer-employee relationship." *K & D Auto Body, Inc. v. Division of Employment Sec.*, 171 S.W.3d 100, 105 (Mo.App. W.D.2005).

> Those factors are: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) right to terminate.

*National Heritage Enters., Inc. v. Division of Employment Sec.*, 164 S.W.3d 160, 167 (Mo.App. W.D.2005). "Missouri courts routinely apply the twenty-factor test in determining the nature of the employment relationship for purposes of tax liability, and those factors have been consistently used as an aid for determining whether an individual is an employee or independent contractor under the common law rules." *K & D Auto Body, Inc.*, 171 S.W.3d at 104 (internal quotation, citation, and punctuation omitted). "The factors are not intended to serve as a bright-line rule with no flexibility, but rather are indices of control

to assist the employer in attempting, for tax purposes, to determine the common law employment status of its workers." *Id.* at 106 (internal quotation omitted). "The degree of importance attached to each factor varies depending on the type of work and individual circumstances, and the relevant factors should be considered in inquiring about employment status with no one factor being decisive." *Klausner v. Brockman*, 58 S.W.3d 671, 680 (Mo.App. W.D.2001).[2] "Not every factor is applicable in every situation, and each case is decided on the basis of its own facts." *K & D Auto Body, Inc.*, 171 S.W.3d at 106 (internal quotation omitted).

"There is no magic formula for determining how many factors must weigh in favor of an employee relationship." *Haggard*, 238 S.W.3d at 157. The issue for this Court to decide on appeal is whether there was substantial and competent evidence to support the Commission's finding that the manufacturer's representatives were E.P.M.'s employees. *Id.*

With regard to whether Buckman was an employee or an independent contractor, the Commission found:

> Factors more indicative of an independent contractor relationship are the lack of set hours of work, no requirement that the worker perform services on a fulltime basis, the fact that most of the services of the worker were performed at locations other than the appellant's premises, the fact that the worker paid all business expenses.

> Factors more indicative of an employee relationship was [sic] the fact that either party could terminate the relationship without legal consequences, the fact that the relationship continued over

**2.** Overruled on other grounds in *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003).

a significant period of time, the worker was paid wages monthly, and was provided with some training. The appellant gave the worker a software program to use and introduced him to a sales method described as "stop and pop" and he was allowed to use the company name and logo for his business cards which identified him with the appellant to the general public. In addition, all matters related to money were handled by the appellant. The appellant received the money and then paid Mr. Buckman. Mr. Buckman was assigned a territory and would only receive payment for matters occurring within that territory. He was provided leads to develop as prospects for the company sales and encouraged to develop new leads but was told the type of prospects to pursue and not pursue. Mr. Buckman had no control over whether a sale would occur or not.

Other factors are less clearcut [sic] in evaluating the relationship. The appellant contended that the work of Mr. Buckman and those similarly situated was not necessary to the operation of the appellant in that most of the sales were made by other classifications of workers. In fact, the evidence establishes that all of the sales were made by workers in other classifications because Mr. Buckman and other representatives could not make sales, had no authority to do so. While the appellant contended that the manufacturer's representatives were not required to perform the services personally, the contract contained a non-compete agreement specific to the representative, a confidentiality clause specific to him, and had only two references to the possibility of the existence of employees of the representative, both appearing in the insurance/indemnification portions of the contract.

The ultimate issue is whether the appellant had the right to control the manner and means by which Mr. Buckman performed the services for which he was paid. He was paid to develop prospects by screening leads he received from the appellant and that he developed. If the prospect was to become a sale for which he was remunerated, he was to conduct screening in a very specific manner by obtaining all of the information necessary, and completing the short sheet. The representative thereafter was limited to supporting the process, by making appointments, maintaining contact with the potential customer, appearing for the presentations, maintaining contact with the customer during and after the installation as a liaison and support person.

After weighing all of the factors, the [Commission] concludes that the appellant did retain the right to control the manner and means of the performance of the work to such extent as to make the relationship between the appellant and Mr. Buckman an employer/employee relationship.

E.P.M. does not identify which, if any, of the basic factual findings it believes are not supported by the evidence. The essence of its claim is that the Commission improperly weighed those facts in analyzing the relationship between Buckman and E.P.M. E.P.M. contends that factual findings of the Commission do not support the conclusion that E.P.M. asserted sufficient control over Buckman to warrant a finding that he was an employee of the company.

While E.P.M. argues that the majority of the twenty factors were indicative of an independent contractor relationship, "our decision does not rest on a simple numerical count of the factors." *K & D Auto Body, Inc.,* 171 S.W.3d at 114. Indeed, as noted *supra,* "[t]here is no magic formula

for determining how many factors must weigh in favor of an employee relationship." *Haggard,* 238 S.W.3d at 157.

■ Thus, we are left to determine whether, in light of the record and the facts found by the Commission, a reasonable trier of fact could have weighed those facts and reasonable inferences drawn therefrom and concluded that Buckman was an employee of E.P.M. "The 'bedrock' of determining the employment relationship remains the common law agency test of the right to control the manner and means of performance." *Higgins,* 167 S.W.3d at 283 (internal quotation omitted). "[I]t is not necessary that the employer actually direct and control the manner in which services are performed; it is sufficient if he or she has the right to do so." *Id.* at 287 (internal quotation omitted). "This determination typically turns on the individual facts of each case." *Ascoli,* 256 S.W.3d at 594.

The focus of the Commission's analysis was clearly on the amount of control that was or could have been asserted by E.P.M. over Buckman. The Commission noted that the parties' relationship had continued over an extended period of time, that Buckman worked exclusively for E.P.M., that E.P.M. had provided Buckman with training, and that Buckman was paid on a monthly basis. Buckman testified that the president of the company trained him on how E.P.M. wanted their sales conducted, that the president went with him on sales calls to demonstrate the sales strategy, and that additional direction and training on the product was provided to the representatives at the monthly sales meetings. The Commission further noted that either party could terminate their relationship at any time without legal consequence. The Commission relied upon the fact that Buckman was directed by E.P.M. to use business cards with the company name and

logo on them to convey his relationship with the company to the general public. Buckman also received mail, e-mail, and phone calls at the E.P.M. corporate office. Trout testified that new sales were critical to the business. The Commission noted that E.P.M. limited the territory in which Buckman could perform his duties, told him what type of customers to pursue and not pursue, determined whether or not to accept the customers he found, determined the amount to charge for the business solicited, collected money from the customers, and paid Buckman a percentage of what was collected. Buckman testified extensively at trial about the various training he had been given by E.P.M. and the directions he was given on how to perform his job. Buckman had to follow specific procedures and use specific forms provided by E.P.M. in order to recommend a potential customer to E.P.M. He further testified that E.P.M. would schedule customer calls and training for him and that he had to notify E.P.M. of any vacation time he intended to take. He also stated that he had to report all customer contacts he had to Mr. Trout, E.P.M.'s president and sales manager. The foregoing evidence supports a finding that E.P.M. had sufficient control over the manner in which Buckman performed his duties to categorize him as an employee.

Certainly, evidence was also introduced at trial that could have supported a contrary conclusion. The Commission acknowledged as much in its order, noting the lack of set work hours, no requirement that the worker perform services on a fulltime basis, the fact that most of the services of the worker were performed at locations other than the appellant's premises, and the fact that the worker paid all business expenses. E.P.M. also points to evidence that manufacturer's representatives were not provided with insurance or

other benefits and that it had not withheld anything from their wages for taxes or social security. Under our standard of review, however, we must defer to the weight given to the evidence and reasonable inferences drawn therefrom by the Commission. *Martinez*, 211 S.W.3d at 115. "When the Commission, as a trier of fact, has reached one of two possible conclusions from the evidence, we will not reach a contrary conclusion even if we might have reasonably done so." *Sartori v. Kohner Props., Inc.*, 277 S.W.3d 879, 885 (Mo.App. E.D.2009) (internal quotation omitted).

Having reviewed the record, we are compelled to conclude that the Commission's decision was supported by sufficient and competent evidence. Point denied.

■ We next turn to E.P.M.'s point challenging the Commission's designation of the other manufacturer's representatives as employees of the company. The only significant difference between Buckman and the other representatives was the fact that the other representatives executed the contracts for hire presented to them by E.P.M. Those contracts do state that the manufacturer's representatives would be regarded as independent contractors. "But while the contractual designation of the work status of a person is not to be brushed aside or ignored, it is not conclusive when there is evidence to overcome such designation." *Nunn v. C.C. Midwest*, 151 S.W.3d 388, 402 (Mo.App. W.D.2004) (internal quotation omitted); *see also Klausner v. Brockman*, 58 S.W.3d 671, 685 (Mo.App. W.D.2001). In this instance, the Commission was justified in determining that the existence of these contracts was not enough to differentiate the other manufacturer's representatives from Buckman. Indeed, the contracts themselves contained non-compete provisions and a confidentiality clause further evidencing control exerted over them by E.P.M. and the exclusive nature of the services they provided. Point denied.

■ In another of its points, E.P.M. claims that the Commission's conclusion that Buckman was discharged, but not for misconduct connected to his work, is not supported by sufficient competent evidence. E.P.M. argues that Buckman voluntarily quit working for E.P.M. by refusing to accept the new contract offered to him.

■ "The Commission's determination as to whether an employee voluntarily left work or was discharged is a factual determination." *Sartori*, 277 S.W.3d at 885 (internal quotation omitted). We "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 222–23. "An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Id.* at 223. "There is nothing in the constitution or section 287.495.1 that requires a reviewing court to view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award." *Id.* Rather, as stated, we must review the entire record, including evidence and inferences drawn therefrom, that are contrary to, or inconsistent with, the Commission's award, to determine whether the award is supported by competent and substantial evidence.

■ "Section 288.050 of Missouri's unemployment benefits law provides that benefits will be denied to unemployed workers if 'the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer." *Ewing v. SSM Health Care*, 265 S.W.3d

882, 886 (Mo.App. E.D.2008). "An employee is deemed to have left work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer." *Miller v. Help at Home, Inc.*, 186 S.W.3d 801, 806 (Mo.App. W.D.2006).

Buckman began working for E.P.M. in 2004 under an oral contract of employment with E.P.M. On November 10, 2006, Trout announced that E.P.M.'s contracts with all of its manufacturer's representatives were terminated as of that date, but he indicated that they would be offered new contracts. Buckman was provided with a copy of the new contract a few days later. The contract was similar to that previously presented to Buckman, but included provisions requiring, among other things, that he report to Rick Nickelson rather than Trout. When Buckman came into Trout's office on November 14, 2006, and indicated that he could not work with Rick Nickelson, who the contract indicated would be taking Trout's place as sales manager, Trout deemed Buckman to have rejected the contract. Trout told Buckman not to attend any meetings he had scheduled on behalf of E.P.M. Trout subsequently met with Buckman, urged him to sign the new contract, and said he would have ten days consider whether to accept it. Nickelson called Buckman the following day, however, and informed Buckman that E.P.M. was withdrawing its offer of employment and that Buckman's relationship deemed terminated when his contract was terminated on November 10.

Given the foregoing facts, the Commission's determination that Buckman was discharged for reasons other than misconduct related to work was supported by sufficient competent evidence. Point denied.

In its final point, E.P.M. challenges the Commission's calculation of its contribution rate under Missouri's employment security law, claiming that the wages and benefits paid to Buckman were improperly included in that calculation since he was not an employee of E.P.M. and had not been terminated by the company. As covered *supra*, the Commission properly found that Buckman was an employee of the company and that he was discharged for reasons other than misconduct. Accordingly, the wages and benefits were properly included in the calculation. Point denied.

The Commission's orders are affirmed.

All concur.