W. F. ATKISSON, Doing Business and Operating the NEW HOTEL CAMERON, of Cameron, Missouri, v. ANDREW J. MURPHY, SR., ELMER J. KEITEL, SR., and HARRY P. DRISLER, Members of the UNEMPLOYMENT COMPENSATION COMMISSION OF MISSOURI, and BERNICE M. HARTER, Appellants.—No. 38743.—179 S. W. (2d) 27.

Division One, March 6, 1944.

Rehearing Denied, April 3, 1944.

*George A. Rozier,* Chief Counsel, and *Edward D. Summers,* Assistant Counsel, for appellants.

*White & Hall* and *Cross & Cross* for respondent.

BRADLEY, C.—W. F. Atkisson, hereinafter referred to as respondent, operated the New Cameron Hotel, at Cameron, Missouri. Bernice M. Harter was a maid in the hotel, and made application for unemployment compensation. Respondent resisted. A claims deputy found that respondent was not an employer of claimant as the term *employer* is defined in the Unemployment Compensation Act. An appeals referee found that respondent was an employer under the act, and respondent appealed to the Commission which found as did the appeals referee, and compensation was awarded. Respondent filed petition in the circuit court for review. The circuit court reversed the finding and award of the Commission, and the Commission appealed. Jurisdiction is in the supreme court because state officers, members of the Commission, are parties. Trianon Hotel Company v. Keitel et al., 350 Mo. 1041, 168 S. W. (2d) 891.

Was respondent an employer under the act? A coffee shop adjoined the hotel and if the employees in the coffee shop were respondent's employees, then his employees were sufficient in number to make him an employer under the act. Sec. 9423 (h) (1), R. S. 1939, Amended, Laws 1941, p. 570, Laws 1943, p. 919. Respondent contends that the coffee shop was operated by Miss Flossie Kious as an independent contractor, and not as his agent, servant, or employee, and that those employed in the coffee shop were employees of Miss Kious. In addition to the coffee shop, there was in the building, a drugstore and a Western Union telegraph office, but these are not involved.

Prior to going to Cameron, respondent operated a restaurant at Chillicothe, Missouri, and the restaurant fixtures, owned by him, were moved from Chillicothe to the New Cameron Hotel coffee shop. Miss Kious had been with respondent for several years and went to Cameron with him. The hotel and coffee shop opened May 18, 1936.

Respondent testified: "I told Miss Kious if she wanted the coffee shop that she could have it, and have the equipment and operate it

under her own supervision and receive all of the profits and I wanted nothing. Nothing, was said about who was to assume any indebtedness incurred. My two daughters (respondent's wife died shortly after the move to Cameron) and I were to have our meals for the rental. The employees in the coffee shop are not my employees and never have been. Any losses or debts incurred in operating the coffee shop are hers (Miss Kious) and not mine. I sign the social security return for my employees (in the hotel) and she signs for hers, but we send the money in one check. She gives me her part of it and I deposit it with my account. I do my banking with the First National and she does business with the Farmers State Bank. I had two employees in the hotel—a night clerk and a house maid. My daughter was day clerk. I didn't have the bell hop employed. He asked me if he could carry the bags and receive the tips and I told him he could. Miss Kious sometimes functioned at the hotel desk, when no one was there. She would tell them (guests) what kind of rooms we had and saw that they got to their room. For such services she received her room rent free. I gave her advice and watched over her and when she would come to me and ask advice I would give it to her. I checked her work; I was seeing how she was doing. I never hired or fired for the coffee shop. I don't know that I have given them (employees in the coffee shop) instructions. I would say that I have given them my information and my best view point, but that never happened when she (Miss Kious) was there.''

At the hearing before the Commission, respondent was asked about his evidence before the appeals referee. The record shows as follows:

''Q. Mr. Atkisson, you remember the hearing before the appeals referee in St. Joseph on October 19, 1938, do you not? A. Yes. Q. You testified in that hearing. Do you remember the appeals referee asking you this question? 'In order that we may clarify this, it may be well if you will tell us just what your position is at this hearing and whether or not you admit ownership of that hotel and coffee shop so we can find out where the dispute is.' A. Yes. Q. And your answer was: 'I own the hotel and coffee shop.' You answered that? A. Yes. . . . Q. Then on page 17 of the transcript (of the evidence before the appeals referee) do you remember this question before the appeals referee? 'Then the issue is solely the ownership of both of those businesses and whether or not Miss Kious is running an independent business from your hotel?' And your answer was: 'I own it but she is on her own and I would protect her if she got a little behind, and I dictate to her some.' Q. Do you remember making that statement? A. I don't remember saying that I dictate to her, but I did give her my advice if you call that dictating. I won't say that I dictated.''

In explanation respondent testified: ''Q. You just said that you owned the coffee shop; you meant that you bought that stuff and paid

for it just as you testified you did the furniture and fixtures of the coffee shop as well as the hotel? A. That is right. Q. You don't claim to own anything else? A. No. Q. You don't claim to operate the coffee shop or have anything except the value of that stuff? A. That is right. . . . Q. And then you say, 'I would protect her if she got a little behind.' You mean if you thought she needed some protection you would give it and you would do that regardless of this hearing and future ones? A. Yes. Q. Then you say, 'I dictate to her some.' You mean that you try to advise her if she is doing something that should be conducted another way? A. Yes. Q. That is where that dictating came in? A. That is what I meant.''

Miss Kious testified: ''I always thought I was the lessee of the coffee shop; he (respondent) owns the equipment, but the business is mine. I get the profits and pay the expenses. I became the lessee of the coffee shop in May, 1936. I have five employees in the coffee shop—three waitresses, a cook, and a dish washer. As to my arrangement with Mr. Atkisson about the coffee shop, he just told me that I could use his equipment and run it on my own, pay my own expenses, and whatever I could get out of it was mine. There was no written lease; the contract was verbal. As far as my girls know, and what they know is that they are working for me, but as far as knowing what kind of a contract I have with Mr. Atkisson, I don't suppose they did. I paid all my bills; water, heat and light were included in my rent. The rent is board for him and his daughters. I do not do any work for the hotel that I receive any wages for. If I can help them do anything, I do, because he is very free with any assistance I might need. If they (hotel workers) asked my advice, I gave it to them, but I had no authority to do so.

''I pay cash. There is a store, Gammet's, across the street. They carry the grocery items in the name of Hotel, New Hotel Cameron, or New Hotel Cameron Coffee Shop. They come in every morning and collect. I don't buy anything on credit. The day's groceries are carried until next morning and I pay it cash. I buy from the wholesale house and they collect when they bring it out. I go to Mr. Atkisson for advice if there is anything that I am having difficulty with. I made arrangements with the hotel night clerk to scrub the coffee shop floor and wash the windows, for which I gave him his meals. I gave the hotel maid (claimant) her noonday meal for serving noonday meals upstairs to ladies who did not want to dress for dinner.''

The hotel stationery, meal tickets, and roadsign advertising showed respondent Atkisson as proprietor of the hotel and coffee shop. In explanation, respondent said that advertising for the coffee shop was ''the real reason that we carried it that way.'' Claimant testified that the employees in the hotel and coffee shop were paid at a desk on a balcony in the coffee shop, and they were paid by respondent, his

daughter, or Miss Kious. "The person at the desk would pay you your wages."

An independent contractor has been defined many times. In Ross v. St. Louis Dairy Co., 339 Mo. 982, 983, 98 S. W. (2d) 717, the court quoted with approval from Flori v. Dolph (Mo. Sup.), 192 S. W. 1. c. 950, as follows: "According to the definition substantially adopted by many courts, with some variation in language, an 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of his work." And following the quote the court said [98 S. W. (2d) 1. c. 723]:

"The right of control as to the mode of doing the work is generally held to be the principal consideration in determining the relationship, but 'retention of the right to supervise as to results, as distinguished from the right to supervise as to the means by which the intermediate results should be obtained, does not affect the relationship.'" See also, Baker v. Scott County Milling Co., 323 Mo. 1089, 20 S. W. (2d) 494, 1. c. 498; Barnes v. Real Silk Hosiery Mills et al., 341 Mo. 563, 108 S. W. (2d) 58.

The Commission (appellant here) emphasizes the following conceded facts: (1) The hotel stationery, the coffee shop meal tickets, and the roadsign advertising showed respondent Atkisson as *proprietor* of the hotel and the coffee shop; (2) respondent testified before the appeals referee that he owned the hotel and the coffee shop, and that he sometimes dictated to Miss Kious as to the operation of the coffee shop; (3) the grocery items for the coffee shop are carried in the name of the Hotel, New Hotel Cameron, or New Hotel Cameron Coffee Shop; and (4) the respondent held himself out to the public and to the employees of the hotel and the coffee shop as being the *proprietor* of the hotel *and* the coffee shop.

It is true that respondent gave plausible explanations as to what he said about *owning* the coffee shop, and about *dictating* sometimes to Miss Kious, etc. But, Were the explanations conclusive? or, Did the whole record raise an issue of fact on the question as to whether Miss Kious operated the coffee shop as an independent contractor?

In an unemployment compensation case appeal, where the sufficiency of the evidence to support the finding of the Commission is challenged, we consider the evidence in the light most favorable to the finding of the Commission and disregard evidence which might support a different finding. Trianon Hotel Co. v. Keitel et al., 350 Mo. 1041, 169 S. W. (2d) 891, 1. c. 896, and cases there cited. But if the evidence is lacking in probative force to support the finding of the Commission, then it is the duty of the court on review to set aside such finding. S. S. Kresge Co. v. Unemployment Compensation Commission, 349 Mo. 590, 162 S. W. (2d) 838, 1. c. 840, and cases

there cited. Also, it should not be overlooked that the Unemployment Compensation Act levies a tax upon the employer who falls within its terms, and "it is well established that the right of the taxing authority to levy a particular tax must be clearly authorized by the statute, and that all such laws are to be construed strictly against such taxing authority." A. J. Meyer & Co. v. Unemployment Compensation Commission, 348 Mo. 147, 152 S. W. (2d) 184, l. c. 190, and cases there cited. Also, we might say that plaintiff explained the lease arrangement with Miss Kious to the United States Treasury Department, and was advised that under the federal act he (respondent) "would not be considered the employer of Miss Kious or the individuals employed by Miss Kious in the operation of the coffee shop."

Respondent's contention that there was no substantial evidence to support the finding of the Commission is analogous to a demurrer to the evidence, and "a demurrer to the evidence admits the truth of the evidence to which the demurrer is directed, and also admits all inferences of fact which a jury might fairly draw from that evidence; and such demurrer can only be sustained when the facts in evidence and the fair inferences to be drawn from such facts are so strongly against the party at whom the demurrer is directed as to leave no room for reasonable minds to differ." Goslin v. Kurn et al., 351 Mo. 395, 173 S. W. (2d) 79, l. c. 84, and cases there cited. The Commission was not bound to believe respondent's explanations. State v. McLane (Mo. Sup.), 55 S. W. (2d) 956, l. c. 958.

In the situation, we are constrained to rule that there was substantial evidence to support the finding of the Commission. The judgment of the circuit court should, therefore, be reversed, and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.