

# SUPREME COURT OF MISSOURI
## en banc

GATEWAY TAXI MANAGEMENT,    )
        )
        Appellant,    )
        )
    v.    )    No. SC94464
        )
DIVISION OF EMPLOYMENT SECURITY,  )
        )
        Respondent.    )

### APPEAL FROM THE
### LABOR AND INDUSTRIAL RELATIONS COMMISSION

*Opinion issued May 12, 2015*

The Labor and Industrial Relations Commission (LIRC) determined that Gateway Taxi Management, d/b/a Laclede Cab Company ("Laclede"), is liable for unemployment tax because its taxi drivers are "employees" under § 288.034.5.[1]  This Court holds that the LIRC's decision is supported by competent and substantial evidence upon the whole record and affirms.

### Factual Background

Laclede operates a taxi service in the St. Louis metropolitan area.  When Laclede hires drivers it has them sign an "Independent Contractor Agreement."  The agreement states, "[I]t is intended by the parties that the status of Driver is solely that of an independent contractor . . . ."  The title of this agreement, and this one sentence in the

---

[1] Statutory references are to RSMo Supp. 2013, unless otherwise notated.

agreement, is not dispositive of this unemployment tax case.[2]  The agreement gives drivers a certain amount of control over their operations.  For instance, it allows them to choose the hours they work.  Drivers may also use their own vehicles or lease cabs from the 140-car fleet belonging to an affiliate of Laclede.  Drivers who lease can choose between 12-hour and 24-hour shifts and, although, Laclede pays for insurance and maintenance of the cabs, drivers must pay for their own cleaning and fuel.

However, the agreement also restricts drivers in certain ways and gives Laclede control over other aspects of the drivers' operations.  Drivers who use their own cabs must paint their cars the same as the fleet, use the same signage, and pay a weekly fee to Laclede.  Drivers who lease from Laclede's affiliate have only two options: 12- or 24-hour shifts.  The cabs are to be used solely for business purposes and are not to be subleased by the drivers.  Drivers are required to use Laclede's GPS-based dispatch system, and Laclede instructs drivers to funnel all potential customers through that system.  Drivers are not allowed to have cell phones with them while driving for Laclede. While drivers may keep all cash collected, Laclede takes a 10% cut from credit card receipts and receipts from certain company vouchers, both of which drivers are required to accept.  In addition to the terms of the agreement, Laclede and the drivers are subject to the Metropolitan St. Louis Taxicab Commission's Vehicle for Hire Code (VHC).[3]  The

---

[2] The fact that the parties signed a contract designating the drivers as independent contractors is relevant but not conclusive.  *Klausner v. Brockman*, 58 S.W.3d 671, 680 (Mo. App. 2001) (overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003).

[3] The VHC was promulgated by the Regional Taxicab Commission.  The Regional Taxicab Commission was established by the General Assembly, under § 67.1804, for "the public

VHC requires compliance from both Laclede and the drivers for issues such as: driver's licensing; appropriate and authorized colors, logo, trademark, symbols, and lettering, and furnished with all the necessary equipment.

A deputy of the Division of Employment Security (DES) determined that Laclede owed employment tax between 2009 and 2011 because Laclede drivers performed services for "wages" in the "employment" of Laclede. Laclede appealed the determination, and, after a hearing, the appeals tribunal reversed. DES then appealed to the LIRC. The LIRC reversed, finding the drivers were employees of Laclede. After opinion by the court of appeals, this Court ordered transfer. Mo. Const. art. V, § 10.

**Standard of Review**

The LIRC's decision is reviewed to determine whether it is "supported by competent and substantial evidence upon the whole record." Mo. Const. art. V, § 18. When reviewing employment security decisions, § 288.210, RSMo 2000, also states:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or

purposes of recognizing taxicab service as a public transportation system, improving the quality of the system, and exercising primary authority over the provision of licensing, control and regulations of taxicab services within the district."

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. An appeal shall not act as a supersedeas or stay unless the commission shall so order.

## Analysis

The first step in determining whether Gateway and its cab drivers are covered by the Missouri employment security statutes, §§ 288.010 to .390, is to determine whether their relationship constitutes one of "employment." This term is given a broad definition in section 288.034.1 to include any "service … performed for wages[.]" Section 288.036.1 defines "wages" to mean "all remuneration, payable or paid, for personal services[.]"

The appeals tribunal determined that the drivers were engaged in "employment" because their remuneration "was the difference between his expenses and the revenue generated by the cab." The expenses include the daily or monthly fee paid to Gateway for the use of the cab (i.e., the "pro"), gasoline, cleaning, and the 10% fee paid to Gateway to process credit card fares. The tribunal concluded: "Although the drivers paid the appellant [Gateway] a fixed daily or monthly 'pro', the drivers' remuneration, derived from revenue generated by their services driving taxicabs for the employer's business, was remuneration for the drivers' personal services, and was 'wages' under Section 288.036."

The second step of the employment analysis is to determine whether the drivers were independent contractors of Gateway rather than employees. Section 288.034.5 provides:

4

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

Accordingly, once it is shown that an individual receives remuneration, the presumption of an employer-employee relationship is established and the "burden of proof shifts to the employer to show that, under the common law right to control test, the worker is an independent contractor." *Bedford Falls Co. v. Div. of Employment Sec.*, 998 S.W.2d 851, 856 (Mo. App. 1999). The appeals tribunal determined that the drivers were independent contractors, and the DES appealed to the LIRC.

Before the LIRC, the parties' arguments focused on the second step of the employment analysis. Having successfully established that the drivers received "wages" for "employment," the DES did not reargue this issue to the LIRC. Gateway, too, gave the issue a single passing reference. It did not ask the LIRC to reverse the tribunal's findings and conclusions regarding this issue and, instead, asked the LIRC to "affirm" the tribunal's decision "in all respects."

The LIRC reiterated the findings of fact made by the appeals tribunal regarding the question of "wages" for "employment" and found further that "the amount of remuneration that Gateway paid to the drivers during the calendar quarters relevant to this matter showed that Gateway had fairly lengthy and continuous relationships with its

5

drivers." In its conclusions of law, the LIRC stated: "As stated in the facts above, Gateway paid considerable remuneration to drivers during the calendar quarters following January 1, 2009." Under section 288.034.5, the Commission stated, "any entity that pays remuneration for services to an individual" is the employer and is engaged in "employment" under the Missouri Employment Security Law unless that entity proves that the individuals were independent contractors.

Gateway contends the LIRC erred in concluding that Gateway paid its drivers remuneration because the drivers were paid by the passengers, not Gateway. DES contends Gateway waived this provision by not challenging the conclusions of the appeals tribunal on this issue before the LIRC. On this, the DES is incorrect. Unlike the second step of the analysis, DES bore the burden of proof on the question of whether the drivers received "wages" for "employment" at every step of the administrative proceeding. Because this Court only reviews the decision of the LIRC, DES must ensure that decision contains sufficient findings and conclusions regarding those issues on which DES bears the burden of proof to sustain DES's position, regardless of whether those issues were argued by the other parties before the LIRC. Gateway can challenge the LIRC's decision that the drivers were paid "wages" for "employment" because that issue is essential to the LIRC's conclusion and it was DES's burden to establish that threshold step.

On the merits, DES argues that the LIRC was correct in finding that the drivers received "remuneration" from Gateway for personal services rendered. On this, DES is correct. Had the drivers been required by their contract to turn over all customer fares to

6

Gateway and then been paid some percentage of those fares as remuneration, there would be no question that Gateway would be paying the drivers "wages" for their services. And, rather than going through this shuffle, if the drivers simply retained their share of the fares and turned the remainder over to Gateway, the net effect would remain the same, i.e., Gateway would be paying the drivers "wages" for their services. *See Higgins v. Missouri Div. of Employment Sec.*, 167 S.W.3d 275 (Mo. App. 2005) ("The fact that Higgins employed the convenience of having the drivers pay themselves by retaining their portion of the fares rather than deliver money to her for redistribution does not mean the drivers were not 'paid' or that the wages were not 'payable' within the context of section 288.036.1").

The process imposed by Gateway's contract with its drivers is the same as in *Higgins*, but one step further removed. Rather than determining the amount of the drivers' "wages" as a percentage of the fares collected, Gateway allowed the drivers to retain 100% of the fares (less a 10% handling charge for credit card fares) minus a flat rate "pro." This approach shifts the risk of slow business entirely to the drivers, but it does not alter the basic character of the parties' relationship. To allow the outcome of this "wage" and "employment" analysis to turn solely on whether the fares are first turned over to Gateway before being returned to the drivers as "wages"—a matter solely in the control of Gateway—would be to exalt form over substance. Gateway operates a cab company. To do so, it needs drivers for its cabs. It obtains those services by paying drivers 100% of the fares they collect *minus* the "pro" and other expenses (e.g., gasoline and daily cleaning costs). Accordingly, the LIRC's finding that Gateway pays

7

remuneration to its drivers for their services is supported by competent and substantial evidence and is not a misapplication of law.

Once it is established the Gateway paid the drivers "wages" for "employment," the burden shifts to Gateway under section 288.034.5 to prove that the drivers were independent contractors. Section 288.034.5 expressly requires the application of common law agency principles to the facts and circumstances to determine whether an entity is an independent contractor or employer. DES uses 8 CSR 10-4.150(1) to "interpret section 288.034.5 . . . apply[ing] the common law rules applicable in determining the employer-employee relationship under 26 U.S.C., Section 3306(i)." DES also considers "case law, Internal Revenue Service regulations and Internal Revenue Service letter rulings [in] interpreting and applying [§ 288.034.5]." DES also considers the IRS's revenue ruling that creates 20 factors for determining employment status. *See* Rev. Rul. 87-41, 1987-1 C.B. 296. These factors are: (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) worker's right to terminate. *Id.* This Court has approved consideration of these 20 factors to assist

8

in distinguishing whether an entity is an employer or independent contractor. *Haggard v. Div. of Employment Sec.*, 238 S.W.3d. 151, 156 n.7 (Mo. banc 2007).

Laclede does not contend that the LIRC acted without or in excess of its powers or that its decision was procured by fraud; therefore, this Court's standard of review is confined to "whether there was substantial evidence to support the LIRC's finding that the workers were [Laclede's] employees." *Haggard*, 238 S.W.3d at 157. The analysis as to whether there is sufficient control to characterize a relationship as employer/employee or independent contractor is factually intensive. In applying the above listed 20 factors, the LIRC considered the following evidence indicative of employee-status: Laclede had supervisors ride with new drivers and train them as to the best locations and strategies to make money; the drivers were told not to carry cell phones and, instead, to have regular customers call Laclede's dispatch system; Laclede required drivers to give voucher customers and dispatches priority; the drivers were integrated and necessary for the success of Laclede; drivers often worked for Laclede for an extended period of time; Laclede had an interest in how the drivers maintained the taxis, because of the amount of investment Laclede had in the 140-car fleet; the drivers were not allowed to work for Laclede and another taxi company; and the drivers or Laclede could end their relationship without liability, merely by providing notice.

The LIRC found that 13 factors weighed in favor of an employer/employee relationship, three were neutral, and four favored independent contractor status. "There is no magic formula for determining how many factors must weigh in favor of an employee relationship." *Id.* The standard of review does not instruct this Court to reweigh the

9

factors but, rather, determine whether there was substantial evidence to support the LIRC's decision. There was competent and substantial evidence upon the whole record to support the decision of the LIRC that Laclede's drivers were employees of Laclede.

## Conclusion

The decision of the LIRC is affirmed.

_____
Zel M. Fischer, Judge

All concur.