

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | |
|---|---|
| TIMSTER'S WORLD FOUNDATION, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) WD79053 |
| | ) |
| | ) OPINION FILED: |
| | ) July 26, 2016 |
| DIVISION OF EMPLOYMENT | ) |
| SECURITY, | ) |
| | ) |
| Respondent. | ) |

### Appeal from the Labor and Industrial Relations Commission

**Before Special Division:** Mark D. Pfeiffer, Chief Judge, Presiding, and
Gary D. Witt and Anthony Rex Gabbert

Timster's World Foundation ("Foundation") appeals from a decision by the Labor and Industrial Relations Commission ("Commission"), which found that since January 1, 2012, parent aides/family assistance workers performed services for "wages" in "employment" by the Foundation, within the meaning of those terms as defined in sections 288.034[1] and 288.036 of Missouri's Unemployment Security Law. In the Foundation's sole point on appeal it avers that the Commission's decision is erroneous because its workers are independent contractors, not

---

[1] All statutory references are to the Revised Statutes of Missouri 2000, as supplemented.

employees.  We hold that the Commission's decision is supported by competent and substantial evidence upon the whole record and affirm.

## Factual and Procedural History[2]

The Foundation was incorporated in 2012 by Kim Boykin as a subchapter S corporation. The Foundation's primary client is the Missouri Department of Social Services ("DSS") for which the Foundation offers services in the form of parent aides, family assistance, service delivery, mentoring, and tutoring.

Since its inception, the Foundation has engaged workers—parent aides and family assistance workers—to provide short-term services and support for families during crises and to teach homemaking skills to parents under stress.  Pursuant to the Foundation's contract with the DSS, each worker is required to submit an application and agree to a background check and a family registry check.  The DSS requires parent aides to have at least a GED and work experience with parents and children.  The family assistance workers must have a bachelor's degree and a working knowledge of assisting parents and children.  The workers are required to personally perform the work and are not allowed to hire assistants or helpers.  The workers' services are provided either in the client's home or in the community.  When a worker qualifies to perform DSS work, the Foundation is responsible for the cases the worker accepts.  Joi Jenkins, Meghan Dawson, Raymond McDaniels, Wendy Dancer, Ethel Fraizer, Brenda Brookenbrock, Christian Brumett, Lauren Buys, and Carol Washington provided both parent aide and family assistance services.  Robin Willis and Emma Holmes provided only parent aide services.

---

[2] In reviewing unemployment benefit cases, we view the evidence objectively rather than in the light most favorable to the Commission's decision. *Lucido v. Div. of Emp't Sec*., 441 S.W.3d 172, 174 (Mo. App. W.D. 2014) (citing *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)).

The Foundation has each worker sign an "Independent Contractor Agreement" in which the worker agrees to service clients referred by the Foundation "for purposes of family assistance/parent aid" in family reunification.[3] The Agreement states that the worker will provide services in accordance with the Foundation's code of conduct, will provide assessment/progress reports from the family visit in accordance with guidelines of the Children's Division along with a certificate of receipt signed by the client verifying that the worker made the visit, will provide to the Foundation a written report within two days of each visit, and will provide transportation to persons involved in the case. The Agreement further states that once a month the Foundation will pay the worker $20.00 per unit or hours worked as the worker's exclusive compensation. The Agreement also contains a "non-solicitation" clause prohibiting the worker from soliciting any of the Foundation's clients for a period of twenty-four months following termination of the worker's relationship with the Foundation, and a "non-competition" clause prohibiting the worker from assisting a competitor or otherwise competing with the Foundation during the time the worker is providing services on behalf of the Foundation and for a period of twenty-four months following termination of the worker's relationship with the Foundation. The Agreement provides that it may be terminated by either party upon thirty days' written notice.

When a DSS case worker contacts Ms. Boykin (*i.e.*, the Foundation) with the specifics of an open case, Ms. Boykin either specifically directs the case to a specific worker or, alternatively, she communicates the offer of the case to all the workers generally and the case is assigned to the first worker who accepts it. The Foundation does not set the worker's hours; the worker and the client agree on a work schedule. The workers are not required to work full-time

---

[3] "The fact that the parties signed a contract designating the [workers] as independent contractors is relevant but not conclusive." *Gateway Taxi Mgmt. v. Div. of Emp't Sec.*, 461 S.W.3d 830, 831 n.2 (Mo. banc 2015).

3

but are required to provide the services and to work the number of hours authorized by the DSS. The workers may not offer their individual services to the general public; instead, the workers perform the services via the Foundation's contract and authorization with the DSS.

The DSS pays the Foundation thirty days after the services have been completed, and the Foundation pays the workers once a month at the rate of $20 per hour, regardless of the amount the Foundation is paid under its contract with the DSS. The workers are not reimbursed for any of their expenses, such as gas or mileage. The workers provide their own writing materials for taking notes, computer access, internet access, cell phone, and transportation. Ms. Boykin and the workers are required by the DSS to participate in continuing education, which they schedule on their own. If the caseworker thinks that the worker needs more training, either the caseworker will contact the worker directly or the DSS will notify Ms. Boykin, who relates that information to the worker. If a worker fails to do something required by the DSS, the caseworker contacts the worker directly. But, if the caseworker is unable to make contact with the worker, the caseworker contacts Ms. Boykin, who communicates with the worker and then reports back to the caseworker.

After the Division of Employment Security ("Division") received from the Foundation an Unemployment Tax Registration form, which indicated the use of independent contractors, the Division mailed Worker Relationship Questionnaires to the Foundation and five workers on or about August 14, 2012. After receiving no response, the Division again mailed Worker Relationship Questionnaires to the Foundation and the workers on August 30, 2012. Thereafter, the Division received a Worker Relationship Questionnaire from Meghan Dawson and from Joi Jenkins but no response from the Foundation as of October 31, 2012. Based on the best information available, including the Worker Relationship Questionnaires received from the two

4

workers, a Specialist with the Division determined that the workers were employees. Specifically, the Specialist found that:

- workers were provided training and instruction by "shadowing" the employer on the first contact with each client;

- the business had the right to supervise the workers;

- the business changes how, where, and/or when the service is performed by calling the workers;

- workers are paid an hourly wage;

- workers perform services under the Foundation's name;

- workers are required to submit time sheets to the Foundation for the hours worked.

Subsequently, the Division received a Worker Relationship Questionnaire from the Foundation in November of 2012, which the Specialist reviewed. The Specialist confirmed that the workers were employees, finding that:

- training, instruction, and supervision is required for the workers;

- workers are required to have certain education in order to perform services for the Foundation;

- the Foundation requires workers to follow a written code of conduct;

- the Foundation requires workers to agree to a non-compete clause;

- if workers need a helper, workers must obtain permission from the Foundation, and the Foundation hires and pays the helper;

- replacement workers must be another Foundation worker;

- all missed appointments must be rescheduled within the same month and approved by the Foundation;

5

- workers are paid hourly;

- workers are required to timely submit progress reports on Foundation letterhead;

- workers are required to record their time on a sign-in sheet.

The Division sent the Foundation a Notice of Liability, informing it of the Division's administrative determinations that since January 1, 2012, the parent aides performed services for wages in employment by the Foundation; and that the Foundation became an employer subject to the Missouri Employment Security Law effective January 1, 2012.

The Foundation appealed the Division's determination to the Appeals Tribunal. The Appeals Tribunal held a hearing and thereafter issued its Decision, examining the twenty-factor test promulgated by the Internal Revenue Service ("IRS")[4] to determine whether the Foundation exercised sufficient control over the parent aides and/or family assistance workers to establish an employer-employee relationship. The Appeals Tribunal determined that twelve of the factors favored an employer-employee relationship (factors 1, 3, 4, 5, 6, 11, 12, 15, 16, 17, 18, and 20), six favored an independent contractor relationship (factors 2, 7, 10, 13, 14, and 19), and two were neutral (factors 8 and 9). The Appeals Tribunal affirmed the Division deputy's administrative determination that the parent aides and/or family assistance workers performed services for wages in the employment by the Foundation and that the Foundation became an employer subject to the Missouri Employment Security Law effective January 1, 2012.

The Foundation filed an application for review with the Commission. In the Commission's analysis, it concluded that one of the Appeals Tribunal findings of neutral—

---

[4] (1) Instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full-time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) right to terminate.

Rev. Rul. 87-41, 1987-1 C.B. 296.

factor 9, relating to where the work was performed—was suggestive of an independent contractor relationship; and one of the Appeals Tribunal findings of employer-employee relationship—factor 15, relating to the monetary investment of the worker—was suggestive of an independent contractor relationship. Even with these two modifications to the Appeals Tribunal's findings, the Commission determined that eleven of the factors favored an employer-employee relationship, eight favored an independent contractor relationship, and one was neutral. The Commission issued its Decision, affirming the ruling of the Appeals Tribunal.

The Foundation appealed to this court pursuant to section 288.210. Further facts relevant to the analysis of the Foundation's appeal are set forth where necessary in our ruling today.

## Standard of Review

Article V, section 18 of the Missouri Constitution provides for judicial review of the Commission's decision to determine whether it is "supported by competent and substantial evidence upon the whole record." Section 288.210 further provides that upon appellate review of a decision of the Commission in an employment security case, "[t]he findings of the [C]ommission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law." We may modify, reverse, remand for rehearing, or set aside the decision of the Commission on the following grounds and no other: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the decision. § 288.210.

In our review of the correctness of the Commission's legal conclusion that, based on the facts found by the Commission, the workers were employees of the Foundation rather than

7

independent contractors, "we exercise our own independent judgment and do not defer to the Commission's conclusion, including the way in which it arrived at that conclusion by balancing, weighing, and applying the various facts it found." *K & D Auto Body, Inc. v. Div. of Emp't Sec.*, 171 S.W.3d 100, 103 (Mo. App. W.D. 2005). "However, on matters of witness credibility, we will defer to the Commission's determinations." *Lucido v. Div. of Emp't Sec.*, 441 S.W.3d 172, 174 (Mo. App. W.D. 2014).

### Analysis of Worker Status

The Foundation contends that the Commission erred in finding that the Foundation was an employer and that the parent aides/family assistance workers were employees rather than independent contractors because that decision was not supported by sufficient evidence and because the overwhelming weight of the evidence supported the conclusion that they were independent contractors.[5]

The Missouri Supreme Court has instructed that the first step we must take in our determination of whether the Foundation and its workers are covered by the Missouri Employment Security Law, §§ 288.010-.390, is to decide whether their relationship constitutes one of "employment." *Gateway Taxi Mgmt. v. Div. of Emp't Sec.*, 461 S.W.3d 830, 832 (Mo. banc 2015). "Employment" is given a broad definition in section 288.034.1 to include any "service . . . performed for wages." Section 288.036.1 defines "wages" to mean "all remuneration, payable or paid, for personal services." The Commission determined that the Foundation paid at least $1,500 to workers during a calendar quarter in the calendar year

---

[5] We note that the Foundation's point is multifarious. The Foundation combines in the same point relied on a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge. These are distinct claims that must appear in separate points relied on in the Foundation's brief to be preserved for appellate review. *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). Despite this violation of Rule 84.04, because it is our policy to decide cases on the merits rather than on technical deficiencies in the brief where we are able to discern the argument made on appeal, we have elected to exercise our discretion to address the merits of the Foundation's claims. *See Wennihan v. Wennihan*, 452 S.W.3d 723, 728 (Mo. App. W.D. 2015). Appellant's counsel is, however, warned that we are under no such obligation to do so in the future and the mandate of Rule 84.04 is mandatory.

beginning January 1, 2012, and, consequently, was an "employer" under section 288.032.1(1)[6] effective January 1, 2012.

The second step of the employment analysis is to determine whether the workers were independent contractors of the Foundation rather than employees. *Gateway Taxi Mgmt.*, 461 S.W.3d at 832. The Division "determines whether a worker is an employee or an independent contractor pursuant to 8 CSR 10-4.150(1) and section 288.034.5." *Haggard v. Div.of Emp't Sec.*, 238 S.W.3d 151, 156 (Mo. banc 2007). Section 288.034.5 provides:

> Service performed by an individual for remuneration shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that such services were performed by an independent contractor. In determining the existence of the independent contractor relationship, the common law of agency right to control shall be applied. The common law of agency right to control test shall include but not be limited to: if the alleged employer retains the right to control the manner and means by which the results are to be accomplished, the individual who performs the service is an employee. If only the results are controlled, the individual performing the service is an independent contractor.

"Accordingly, once it is shown that an individual receives remuneration, the presumption of an employer-employee relationship is established and the burden of proof shifts to the employer to show that, under the common law right to control test, the worker is an independent contractor." *Gateway Taxi Mgmt.*, 461 S.W.3d at 833 (internal quotation omitted). The term "independent contractor" is not defined in the Employment Security Law but has long been judicially defined as "one who, exercising an independent employment, contracts to do a piece of work according to his own methods, without being subject to the control of his employer except as to the result of his work." *Atkisson v. Murphy*, 179 S.W.2d 27, 29-30 (Mo. 1944). *See also K & D Auto Body, Inc.*, 171 S.W.3d at 105. "Decisions hold without exception that whether the work status

---

[6] Section 288.032.1(1) defines "employer" as "[a]ny employing unit which in any calendar quarter in either the current or preceding calendar year paid for service in employment wages of one thousand five hundred dollars or more[.]"

9

is that of employee or independent contractor depends on the facts in a particular case." *K & D Auto Body, Inc.*, 171 S.W.3d at 105 (internal quotation omitted).

In order to interpret section 288.034.5, 8 C.S.R 10-4.150(1) directs the Division to apply the common law rules applicable in determining the employer-employee relationship under 26 U.S.C. § 3306(i).[7] The regulation further directs the Division to consider the case law, IRS regulations, and IRS letter rulings interpreting and applying that subsection. 8 C.S.R. 10-4.150(1).

The IRS has identified twenty factors as guides for determining whether sufficient control is present to establish an employer-employee relationship:

> (1) instructions; (2) training; (3) integration; (4) services rendered personally; (5) hiring, supervising, and paying assistants; (6) continuing relationship; (7) set hours of work; (8) full time required; (9) doing work on employer's premises; (10) order or sequence set; (11) oral or written reports; (12) payment by hour, week, month; (13) payment of business and/or traveling expenses; (14) furnishing of tools and materials; (15) significant investment; (16) realization of profit or loss; (17) working for more than one firm at a time; (18) making service available to general public; (19) right to discharge; and (20) right to terminate.

Rev. Rul. 87-41, 1987-1 C.B. 296. "The degree of importance of each factor varies depending on the occupation and the factual context in which the services are performed." *Id.* The Commission provided its own analysis as to factors 9 and 15, but otherwise adopted the ruling of the Appeals Tribunal, ultimately concluding that eleven of the factors indicated an employer-employee relationship, eight indicated an independent contractor relationship, and one was neutral. Recognizing that determining whether the IRS factors point to an employee-employer relationship versus independent contractor status is never a simple matter of arithmetic, *Travelers Equities Sales, Inc. v. Div. of Emp't Sec.*, 927 S.W.2d 912, 925 (Mo. App.

---

[7] 26 U.S.C. § 3306(i) adopts the definition of "employee" in 26 U.S.C. § 3121(d)(2): "any individual who, under the common law rules applicable in determining the employer-employee relationship, has the status of an employee."

W.D. 1996), and that some factors carry greater weight depending on the circumstances and industry connected with each case, *id.*, the Commission concluded:

> Even after taking into consideration the above-discussed factor changes in our analysis [as to factors 9 and 15], the most important and majority of control indicia show that [the Foundation] retained the right to control the manner in which the Workers performed their duties, not just their end results. Therefore, like the Appeals Tribunal, we conclude that [the Foundation] did not meet its burden of proving that the Workers were independent contractors.

The issue on appeal is whether there was substantial and competent evidence to support the Commission's finding that the parent aides/family assistance workers were the Foundation's employees. *Haggard v. Div. of Emp't Sec.*, 238 S.W.3d 151, 157 (Mo. banc 2007). "Missouri courts routinely apply the twenty-factor test in determining the nature of the employment relationship for purposes of tax liability, and those factors have been consistently used as an aid for determining whether an individual is an employee or independent contractor under the common law rules." *E.P.M. Inc. v. Buckman*, 300 S.W.3d 510, 514 (Mo. App. W.D. 2009) (internal quotation omitted). "The factors are not intended to serve as a bright-line rule with no flexibility, but rather are indices of control to assist the employer in attempting, for tax purposes, to determine the common law employment status of its workers." *Id.* (internal quotation omitted). "The degree of importance attached to each factor varies depending on the type of work and individual circumstances, and the relevant factors should be considered in inquiring about employment status with no one factor being decisive." *Id.* (internal quotation omitted). "The focus of the inquiry must be the degree to which the employer has the right to control the manner and means of performance." *Nat'l Heritage Enters. v. Div. of Emp't Sec.*, 164 S.W.3d 160, 167 (Mo. App. W.D. 2005) (internal quotation omitted).

Accordingly, we examine the factors challenged by the Foundation in light of the Commission's factual findings.[8] In our discussion of each factor, the initial paragraph is a quote of the descriptive comment from IRS Revenue Ruling 87-41.

Factor 1 - Instructions

A worker who is required to comply with other persons' instructions about when, where, and how he or she is to work is ordinarily an employee. This control factor is present if the person or persons for whom the services are performed have the right to require compliance with instructions.

"With respect to the 'instructions' factor, the right to control is manifested in control over the 'when, where and how' work is completed." *K & D Auto Body, Inc. v. Div. of Emp't Sec.*, 171 S.W.3d 100, 106 (Mo. App. W.D. 2005) (internal quotation omitted).

The Foundation argues that the code of conduct is the only instruction given to workers by the Foundation; and that the DSS caseworker and the workers, not the Foundation, determine when, where, and how the worker will provide the services.

The record reflects that the Foundation provides client contact and support information that it receives from the DSS to the worker and monitors the worker's compliance with the requirements of the Foundation's contract with the DSS. The worker agrees to provide service to referrals made by the Foundation in accordance with the Foundation's code of conduct. For each referral, after rendering the services, the worker is required to provide the Foundation and the DSS caseworker a progress report and certificate of receipt signed by the client verifying that the worker made the visit. The worker is required to provide to the Foundation a written report within two days of each visit. When a worker qualifies to perform DSS work, the Foundation is

---

[8] In the Foundation's brief, it argues that the Commission's findings as to factors 1, 3, 8, 16, 17, 18, and 20 are unsupported by substantial evidence. Because the parties do not disagree with the Commission's findings as to factors 2, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, and 19, and because from our independent review of the record we have determined that those findings are supported by sufficient competent and substantial evidence, we will not discuss them further. Accordingly, we will discuss only those factors as to which the Foundation challenges the Commission's rulings thereon.

12

responsible for the cases the worker accepts; if the case is not being worked, the Foundation has to work the case or give it back to the DSS. If a worker fails to do something required by the DSS and the caseworker is unable to contact the worker, the caseworker contacts the Foundation, who contacts the worker. The Foundation then reports back to the caseworker. The Foundation also contacts the workers for updates on cases. In light of the foregoing evidence, there is substantial and competent evidence in the record supporting the Commission's ruling that Factor 1 favors employee-employer status.

### Factor 3 - Integration

> Integration of the worker's services into the business operations generally shows that the worker is subject to direction and control. When the success or continuation of a business depends to an appreciable degree upon the performance of certain services, the workers who perform those services must necessarily be subject to a certain amount of control by the owner of the business.

"The integration factor refers to whether a business could continue without the contribution of the [workers] in question; as such, integral services are more likely to be subject to the business'[s] control." *K & D Auto Body, Inc.*, 171 S.W.3d at 107 (internal quotation omitted).

The Foundation contends that Ms. Boykin could continue to provide the parent aide/family assistance services herself without the cases being handled by the workers.

The record indicates, however, that the workers' services are essential to the success and continuation of the Foundation's business, which depends on qualified parent aides/family assistance workers to perform the services required for DSS cases. Because the workers' services are integral to servicing the volume of DSS cases accepted by the Foundation and to the continued success of the Foundation's business operations, there is substantial and competent evidence supporting the Commission's ruling that Factor 3 favors employee-employer status.

Factor 8 - Full Time Required

> If the worker must devote substantially full time to the business of the person or persons for whom the services are performed, such person or persons have control over the amount of time the worker spends working and impliedly restrict the worker from doing other gainful work.  An independent contractor on the other hand, is free to work when and for whom he or she chooses.

The Foundation contends that a worker functions as an independent contractor with regard to this factor because the Independent Contractor Agreement does not require the worker to devote substantially full-time or any certain amount of time to the referrals.  Additionally, the worker may decline to accept an offered case.

The record reflects that the Foundation does not set the worker's hours; the worker and the client agree on a work schedule.  The workers are not required to work full-time but are required to provide the services and to work the number of hours authorized by the DSS.  In the record is evidence that two of the workers had other jobs (Carol Washington worked as a substance abuse counselor, and Meghan Dawson worked at a day care center) unrelated to the services they performed for the Foundation.  Accordingly, our objective review of the evidence in the record leads us to conclude that the only reasonable conclusion is that Factor 8 favors independent contractor status, not employee-employer status.  Thus, we find that there is not substantial and competent evidence supporting the Commission's ruling to the contrary.

Factor 16 - Realization of Profit or Loss

> A worker who can realize a profit or suffer a loss as a result of the worker's services (in addition to the profit or loss ordinarily realized by employees) is generally an independent contractor, but the worker who cannot is an employee.  For example, if the worker is subject to a real risk of economic loss due to significant investments or a bona fide liability for expenses, such as salary payments to unrelated employees, that factor indicates that the worker is an independent contractor.  The risk that a worker will not receive payment for his or her services, however, is common to both independent contractors and employees and thus does not constitute a sufficient economic risk to support treatment as an independent contractor.

Here, workers provide their services either in the client's home or in the community. "[N]one of the [workers] have any investment for facilities or otherwise. Therefore, they bear no risk of loss in that regard, and they likewise cannot make an investment profit." *K & D Auto Body, Inc.*, 171 S.W.3d at 111. Their compensation is limited to $20 per hour, and they are not reimbursed for any of their expenses, such as gas or mileage. "This can hardly be said to be a 'bona fide liability for expenses, such as salary payments to unrelated employees' as contemplated by this factor." *Id.* Accordingly, there is substantial and competent evidence in the record supporting the Commission's ruling that Factor 16 favors employee-employer status.

Factor 17 - Working for More than One Firm at a Time

> If a worker performs more than de minimis services for a multiple of unrelated persons or firms at the same time, that factor generally indicates that the worker is an independent contractor. However, a worker who performs services for more than one person may be an employee of each of the persons, especially where such persons are part of the same service arrangement.

Here, the non-competition clause in the Independent Contractor Agreement prohibits a worker, during the provision of services to the Foundation and for twenty-four months after termination, from serving as an employee of any business that engages in the Foundation's activities. Thus, though Ms. Boykin testified that some of the workers engaged in simultaneous parent aide/family assistance work or employment while also performing work for the Foundation, no evidence was offered to corroborate this suggestion by Ms. Boykin. *See Lucido v. Div. of Emp't Sec.*, 441 S.W.3d 172, 174 (Mo. App. W.D. 2014) ("[O]n matters of witness credibility, we will defer to the Commission's determination."). Accordingly, the substantial and competent evidence in the record supports the Commission's ruling that Factor 17 favors employee-employer status.

Factor 18 - Making Service Available to General Public

> The fact that a worker makes his or her services available to the general public on a regular and consistent basis indicates an independent contractor relationship.

The record in this case reflects that workers may not offer their services to the general public because the workers perform the services through the Foundation's contract and authorization with the DSS. There was no evidence that the workers advertise as providing parent aide/family assistance services in their own names or represent themselves to the public or to the parents/families with whom they work as independent parent aide/family assistance workers. *See K & D Auto Body, Inc.*, 171 S.W.3d at 112. Furthermore, the non-competition clause in the Independent Contractor Agreement prohibits a worker, during the provision of services to the Foundation and for twenty-four months after termination, from serving as an employee of any business that engages in the Foundation's activities. Thus, the substantial and competent evidence in the record supports the Commission's ruling that Factor 18 favors employee-employer status.

Factor 20 - Right to Terminate

> If the worker has the right to end his or her relationship with the person for whom the services are performed at any time he or she wishes without incurring liability, that factor indicates an employer-employee relationship.

Under the terms of the Independent Contractor Agreement, "[t]his Agreement may be terminated by either party providing 30 days written notice to the other party for any reason." Thus, a worker may terminate his or her work relationship with the Foundation without incurring any financial liability, for breach of contract or otherwise, *see id.*, by providing thirty days' written notice. Additionally, Ms. Boykin testified that the workers could terminate their relationship with the Foundation without liability. Therefore, there is substantial and competent

evidence in the record supporting the Commission's ruling that Factor 20 favors employee-employer status.

To summarize numerically, of the twenty factors set forth in Revenue Ruling 87-41, eleven factors favor employee status, while nine favor independent contractor status.[9] To be sure, this is a close call. However, it is undisputed that the workers received remuneration from the Foundation; it is thus presumed that the relationship between the workers and the Foundation is one of employee-employer; and the Foundation bears the burden of proof to demonstrate that, instead, the relationship is that of independent contractor. *See Gateway Taxi Mgmt. v. Div. of Emp't Sec.*, 461 S.W.3d 830, 833 (Mo. banc 2015). We agree with the Commission that "the most important and majority of control indicia show that [the Foundation] retained the right to control the manner in which the Workers performed their duties," and likewise, we agree with the Commission that the Foundation "did not meet its burden of proving that the Workers were independent contractors."

Because there is sufficient competent and substantial evidence in the record to support the Commission's determination that the Foundation's workers performed services for wages in employment and, thus, were not independent contractors, we affirm the Commission's decision.

The Point is denied.

---

[9] The United States Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 752 (1989), set forth two additional factors for consideration: "the provision of employee benefits; and the tax treatment of the hired party." (Footnote omitted.) The Commission made no findings regarding these additional factors. However, the record indicates that the workers did not receive employee benefits and were responsible for the payment of all taxes. Thus, these additional factors support independent contractor status.

## Conclusion

The decision of the Commission is affirmed.

_____

Mark D. Pfeiffer, Chief Judge

Gary D. Witt and Anthony Rex Gabbert, Judges, concur.